# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

CARLA DeANGELIS,
    *Plaintiff*,

v.

CITY OF BRIDGEPORT, *et al.*,
    *Defendants*.

No. 3:14-cv-01618 (JAM)

## RULING ON MOTIONS *IN LIMINE*

Plaintiff Carla DeAngelis worked for the City of Bridgeport as a "telecommunicator" to answer emergency phone calls. She has filed this lawsuit against the City and three of her former supervisors (Dorie Price, Anthony D'Onofrio, and Debra Deida). She claims that they discriminated against her on the basis of her gender, that they retaliated against her, and that they inflicted emotional distress. The factual background of this case has been described in detail in the Court's ruling on defendants' motion for summary judgment. *See DeAngelis v. City of Bridgeport*, 2017 WL 3880762 (D. Conn. 2017). This ruling addresses most of the parties' pending motions *in limine* for trial that is slated to begin before me this week.

### *Motions* **In Limine** *re "Me Too" Evidence from Nonparty Employees*

Defendants have moved *in limine* to preclude certain aspects of anticipated testimony by four different women who worked with plaintiff at the Bridgeport call center. As a general matter, one of the ways that a plaintiff in an employment discrimination case may try to prove that she has been the subject of discrimination is by introducing evidence that the employer has engaged in similar discrimination against other employees. This type of evidence is often called "me too" evidence. Common sense tells us that if an employer has discriminated against other employees on grounds that are similar to the grounds that plaintiff herself claims, it is somewhat

1

more likely that the employer may have discriminated on the same grounds against the plaintiff employee. Similar acts of discrimination may likewise support a discriminatory hostile work environment claim. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). In other words, depending on the degree of similarity, "me too" evidence may be relevant and highly probative under Fed. R. Evid. 401 for a discrimination claim.

On the other hand, "me too" evidence raises a concern about unfair prejudice, confusion of the issues, and undue delay under Fed. R. Evid. 403. A case brought in the name of a single plaintiff for discrimination may end up devolving into a prolonged trial about an employer's alleged discrimination against many other employees who are not parties to the case. Moreover, "me too" evidence raises a separate concern under Fed. R. Evid. 404(b) that a jury may draw an impermissible "character" inference against an employer because of evidence about the employer's alleged mistreatment of others.

In light of these competing concerns, the Supreme Court has instructed that the admissibility of "me too" evidence should be subject to a careful, case-by-case, and fact-intensive determination that accounts for the likely probative value of the "me too" evidence as against its potential for unfair prejudice. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008); *see also Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 425 (8th Cir. 2017). Once an employer raises an objection to "me too" evidence, the burden falls on the plaintiff employee to justify its proper admissibility at trial. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 152 (2d Cir. 2010).

There are at least three factors that are important to deciding how relevant and probative a plaintiff's "me too" evidence may be at trial. The first factor is how *similar* the "me too" acts of alleged discrimination are to the alleged acts of discrimination against the plaintiff. The

second factor is whether any of the *same individuals* were involved with perpetrating the alleged "me too" acts of discrimination as those individuals who the plaintiff alleges discriminated against her. And the third factor is what kind of *temporal nexus* exists between the alleged "me too" acts of discrimination and the alleged acts of discrimination against the plaintiff. *See, e.g.*, *Schneider v. Regency Heights of Windham, LLC*, 2016 WL 7256675, at *12 (D. Conn. 2016) (listing somewhat similar factors).

Of course, relevance is but one concern, while the potential for unfair prejudice from "me too" evidence is another. The reality is that our workplaces are often rife with conflict. Sometimes there are "good" employees who labor under "bad" bosses. Sometimes there are "good" bosses who must make do with "bad" employees. And sometimes there's blame enough to heap on all sides.

Regardless, Congress did not enact Title VII to be "a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). So when a court evaluates the admissibility of "me too" evidence, it should be vigilant to the risk that a plaintiff—by seeking to inject a trial with evidence of wrongful acts against others—may effectively seek to put an employer or supervisors on trial for presiding over a generally toxic or dysfunctional workplace, rather than on trial for acts of illegal discrimination or retaliation that actually come within the scope of Title VII and similar laws.

Courts should likewise be wary of a plaintiff whose only real claim of similarity for "me too" evidence is that the other employee is from the same protected class as plaintiff. If this single common denominator were enough of itself to justify admission of "me too" evidence, then the floodgates would fly open for every discrimination plaintiff to leverage his or her claim by putting the employer on trial for every workplace gripe, slight, or misunderstanding involving

perhaps multitudes of employees who happen to be from the same protected class. And for those cases where an employer is guilty of no more than a dysfunctional—rather than discriminatory—work environment, the employer's only defense might be to make matters worse for itself by introducing evidence that equal numbers of employees from a *non*-protected class had similar complaints about working conditions and relationships ("we treated all the men just as badly as the women"). At the end of the day, a jury—perhaps exhausted by so many tales of workplace woe not even involving the plaintiff—might well render a verdict against an employer or supervisors on "rough justice" grounds having little to do with actual discrimination or retaliation against plaintiff or others.

Courts have a role to ensure the responsible presentation of evidence that is appropriate to the lawful scope of a plaintiff's claim. I will now turn to consideration of several aspects of "me too" evidence that are contested by defendants.[1]

A. *Wanda Givens*

Defendants move to preclude the testimony of plaintiff's former co-employee Wanda Givens regarding three matters: (1) a 2012 incident in which Givens handled a difficult suicide call and defendant Price ordered her to return to work several days after handling the call; (2) an incident in which the City of Bridgeport sought to terminate Givens while she was a probationary employee; and (3) testimony regarding defendant D'Onofrio's insensitive behavior in relation to the 2012 suicide call. Doc. #82 at 1, 4, 5.

---

[1] To the extent that the Court may have relied on any of the testimony at issue in this motion in its summary judgment ruling, the Court was not presented at that time with the evidentiary concerns now raised by defendants pursuant to Fed. R. Evid. 403 and 404 about the admission of this evidence. Notwithstanding my decision to preclude some of plaintiff's "me too" evidence, I conclude that there are still genuine issues of fact remaining for trial.

4

Defendants convincingly argue that there is nothing about these incidents that raises an inference of gender bias. Indeed, Givens filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) regarding her treatment by Price, but claimed that her treatment was race-based, not gender-based. Doc. #82 at 21–23.[2] And she later dropped the claim. Nor did she file a gender discrimination claim against D'Onofrio; instead, she filed a grievance alleging simply that he was failing to supervise. Doc. #82 at 12 ("I didn't like the way he handled the room. Failure to supervise was really what it was.").

Although plaintiff disclaims any intent to introduce evidence of Givens' filing of a CHRO complaint (understandably enough, because the fact that Givens did not claim gender discrimination could be immensely damaging to the probative force of Givens' testimony), I have reviewed Givens' deposition testimony and conclude that there is little from it to support a claim that either Price or D'Onofrio discriminated against her on the basis of her gender with respect to the incidents that defendants seek to preclude. I also conclude that much of Givens' testimony would be offered for improper melodrama and impugnment-of-character reasons having nothing to do with gender-based discrimination (such as Givens' claim of "cold hearted" insensitivity by D'Onofrio about a tragic suicide and Price's decision to insist that Givens go back to work when Givens did not feel up to it after the suicide). Accordingly, I will grant defendants' motion to preclude Givens from testifying in plaintiff's case-in-chief about the three matters described above.

This ruling is without prejudice to the right of plaintiff to call Givens to testify about other proper subjects. *See, e.g.*, Doc. #99-1 at 15-16 (Givens' deposition testimony concerning

---

[2] I do not doubt that sometimes evidence of one form of discrimination may be relevant to a claim for another form of discrimination. *See, e.g.*, *Coach Stores*, 202 F.3d at 570. But still there must be demonstrated a nexus between the two forms of discrimination, which nexus is lacking here.

D'Onofrio's aggressive verbal confrontations only with women and not men). And this ruling may be subject to reconsideration at trial if defendants open the door to these incidents by means of their cross-examination at trial.

To the extent that plaintiff herself seeks leave to testify about any adverse treatment of Givens (Doc. #99 at 8), plaintiff may do so as to appropriately relevant matters that are outside the scope of the incidents subject to preclusion by this ruling. Of course, any recounting by plaintiff of any adverse acts by defendants against Givens (or any other employees) must be based on plaintiff's firsthand observation rather than plaintiff's rehashing what she heard from Givens or other non-defendant employees. *See DeMarco v. W. Hills Montessori*, 350 F. App'x 592, 594 (2d Cir. 2009) (noting that "harassment experienced by other employees is relevant to hostile work environment claims, but the evidence must be firsthand accounts of the events in question" and that plaintiff "was certainly entitled to put witnesses on the stand and elicit testimony of their experiences with harassment to support her claim" but that "she was not entitled to testify as to what she heard from these employees in order to prove a hostile work environment, as the district court properly concluded").

*B. Rita Marcus*

Defendants move to preclude the testimony of Rita Marcus regarding three matters: (1) an incident that occurred on July 6, 2011, involving alleged discrimination based on physical disability and a related suspension; (2) an incident in which Price prohibited Marcus from taking a day off from work to attend court proceedings; and (3) harassment of Marcus by defendants involving forcing her to learn the "police side" of the call center shortly before she was going to retire. Doc. #83 at 1, 3. At the pretrial conference in this matter, plaintiff stated that she did not intend to offer evidence about the request for time off to go to court or about Marcus learning the

6

police-side of the call center. I therefore denied this motion *in limine* on the record as to the second and third incidents on the ground that plaintiff has disclaimed intent to introduce evidence of those incidents.

In regard to the first incident, Marcus alleged that her supervisors discriminated against her on the basis of her hypertension disability, not because of her gender. *See* Doc. #83 at 18-23 (CHRO complaint). Neither of Marcus's supervisors are defendants in this case or are otherwise involved in any of the factual allegations that serve as the basis for this case, although Price was involved in the disciplinary decision. *Id.* at 19, 20, 22. The incident occurred in 2011, well before plaintiff had started working at the call center. *Id.* at 18. Additionally, Marcus alleged only disability-based discrimination based on her hypertension. *Ibid.*

Weighing all these factors, I conclude that in light of the different supervisors, the claim of disability discrimination rather than gender discrimination, and the time gap, this evidence does not meet the relevance standard of Rule 401. Any conceivable relevance would be substantially outweighed by the potential for unfair prejudice under Rule 403 and Rule 404(b). Therefore, I will grant the motion *in limine* as to the testimony of Rita Marcus concerning the three areas identified in defendants' motion (subject to the same understandings described above for Wanda Givens).

### C. Theresa Samuelson

Defendants move to preclude the testimony of Theresa Samuelson regarding three matters: (1) difficulty in obtaining leave under the Family and Medical Leave Act (FMLA); (2) an interaction with Price in which Samuelson believed Price behaved in an aggressive and intimidating manner; (3) events during Samuelson's probationary period, including an attempt by Price to terminate Samuelson after she took a sick day and an extension of Samuelson's

7

probationary period. Doc. #84 at 1-3. Plaintiff stated during the pretrial conference that she did not intend to offer evidence about the FMLA leave. I will therefore deny the motion *in limine* as to the FMLA incident on the ground that plaintiff has disclaimed intent to introduce evidence of this incident.

As to the alleged incident involving Price speaking harshly to Samuelson in her office about training requirements, Samuelson stated this happened on one occasion and that she did not see Price act in this manner toward any other female employees. Doc. #84 at 17. In view of plaintiff's own allegations about physical intimidation of female employees, I conclude that this incident is relevant, that its nature goes to the heart of plaintiff's own claim, and that its limited duration will not lead to unfair prejudice to any defendant.

As to Samuelson's testimony about Price's alleged effort to terminate her employment because of her taking sick leave, nothing from Samuelson's testimony supports a claim that this particular action had anything to do with Samuelson's gender. Even assuming that this adverse action as to Samuelson were relevant, I conclude that allowing evidence concerning the entire background of Samuelson's probationary status and all the other related events concerning the attempted termination of Samuelson and eventual extension of her probationary status would be of marginal probative value as to plaintiff's claims and be substantially outweighed by the possibility of unfair prejudice, confusion, and undue delay.

Accordingly, I will grant in large part defendants' motion *in limine* as to the testimony of Theresa Samuelson as to the first and third subjects itemized above. Samuelson may otherwise testify about the second subject listed above concerning her interaction with Price about her training requirements. As above, this ruling is subject to the same understandings as for my ruling with respect to Givens and Marcus.

### D. Thea Robinson

Defendants move to preclude the testimony of Thea Robinson regarding an incident in October 2012 in which defendant D'Onofrio allegedly poked Robinson. Doc. #86. Plaintiff claims that Robinson's testimony supports plaintiff's claim that D'Onofrio engaged in physical intimidation toward women at the workplace. Plaintiff also stated during the pretrial conference that she would testify that she personally observed D'Onofrio engage in physically intimidating behavior toward female employees, but not toward male employees.

To the extent that there is a claim and evidence of physical intimidation of female employees, I conclude for the reasons discussed as to Samuelson above that this is properly relevant for plaintiff's discrimination claim. Because of the limited durational nature of this one incident involving Robinson, the probative value is not substantially outweighed by the potential for unfair prejudice. Accordingly, I will deny defendants' motion *in limine* to preclude the testimony of Thea Robinson concerning the alleged poking incident (and with the understanding that the parties mutually intend to elicit the outcome of disciplinary proceedings against both Robinson and D'Onofrio as a result of this incident).

### *Plaintiff's complaints*

Defendants have moved *in limine* to preclude three complaint documents drafted by plaintiff and dated April 25, 2013, August 5, 2013, and September 16, 2013. Doc. #85. These documents are replete with bitter allegations of slights, insults, bullying, and other alleged mistreatment of plaintiff by D'Onofrio and Price, as well as by others whom plaintiff has not sued in this action. Conspicuously missing from these documents is any claim by plaintiff that she was picked on because of her sex or gender.

Although it is a close issue in my mind, I will nonetheless allow plaintiff to introduce these complaint documents at trial on the basis of her representation that each of them were indeed furnished during her employment to the defendant City of Bridgeport. These documents may therefore be relevant to plaintiff's retaliation claim, and they are of general relevance to understanding the parties' ongoing acrimonious course of dealings. Because (as discussed in more detail below) the hearsay rules bar plaintiff from introducing her own prior statements for the truth of any matters asserted, and with the understanding that these complaint documents are offered instead as to defendants' state of mind and to explain the parties' subsequent course of dealing while plaintiff remained employed with defendants, the Court will instruct the jury upon defendants' request that they may consider these internal complaint documents only for non-hearsay purposes. Accordingly, I will deny defendants' motion *in limine* to preclude plaintiff's complaint documents.

### *Testimony and Evidence from Greenwich Police Department*

Defendants next move *in limine* to preclude testimony and evidence from the police in Greenwich, Connecticut about her application to work as a dispatcher there in December 2013, shortly after she had been placed on administrative leave from her employment with the City of Bridgeport as a result of incidents that form the basis for plaintiff's lawsuit. Doc. #87. Plaintiff seeks to admit her application for employment as well as a background investigation report completed by detectives of the Greenwich police that relates plaintiff's personal background and her own version of events as told to the detectives about why she had been placed on administrative leave. For example, plaintiff told the Greenwich police detectives how D'Onofrio had "problems with women at the workplace" and how her alleged threat to D'Onofrio had been "misinterpreted" to lead to her arrest. Doc. #87 at 7.

The Federal Rules of Evidence generally prohibit the introduction of hearsay, which is defined as an out-of-court statement that is offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) and 802. Although one of the hearsay rule's exceptions allows for admission of the statement of a party opponent, *see* Fed. R. Evid. 801(d)(2), there is no corresponding exclusion or exception for a party to juice its own case at trial by willy-nilly introducing the party's own prior consistent statements. *See, e.g.*, *Tome v. United States*, 513 U.S. 150, 157 (1995); *United States v. Blake*, 195 F. Supp. 3d 605, 610-11 (S.D.N.Y. 2016).

The reasons for this are obvious: plaintiffs and defendants alike could relieve themselves from having to testify at all just by writing up their own version of the "truth" and submitting it with an evidence sticker as an exhibit at trial. Better yet, the parties could hire movie producers to compose slick and carefully edited video presentations of their testimony to sell to the jury on a big screen at trial.

Trials don't work like that. Nor do the rules make any exception (as plaintiff seems to think) for parties to lard the record with their own prior, self-serving statements about the facts, so long as they agree to be cross-examined about them. *See, e.g.*, *United States v. Adams*, 385 F.2d 548, 550-51 (2d Cir. 1967). After all, the point of a trial is for parties and witnesses to testify in the first instance about what facts are true. A jury listens and decides if these facts are true, without regard to the party's effort to prop up their case with a strategic litany of prior consistent statements.[3]

It is apparent here that plaintiff seeks admission of her statements to the Greenwich police for the truth of those statements and in order to bolster by repetition her anticipated trial

---

[3] See Comment, *Prior Consistent Statements*, 36 Yale L.J. 1162, 1163 n.1 (1927) ("'Tis the note of the Jubjub! Keep count I entreat, You will find I have told it you twice. / 'Tis the song of the Jubjub! The proof is complete, If only I've stated it thrice.") (quoting Lewis Carroll, THE HUNTING OF THE SNARK 28 (Harper's ed. 1903)).

testimony. Although statements of police officers in police reports are sometimes admissible as an exception to the hearsay rules, this is not so for the hearsay-within-hearsay of a third-party's statement to the officer as recounted in a police report. *See* Fed. R. Evid. 805; *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991). Plaintiff does not otherwise identify any exclusion or exception to the hearsay rules that lets her smuggle into the evidence her prior, self-serving statements to the Greenwich police.

Accordingly, I will grant defendants' motion *in limine* to preclude the content of plaintiff's statements to the Greenwich police. This ruling, however, is without prejudice to plaintiff's introduction of any statements to the police that plaintiff may offer for any proper non-hearsay purpose and also without prejudice to plaintiff's right to testify that she sought employment with the Greenwich police if relevant to her claim for damages.

### *Plaintiff's remaining motions* in limine

Plaintiff has also filed motions *in limine* to preclude "legal and factual conclusions," to preclude evidence of a *Faragher/Ellerth* defense, and for a mandatory adverse inference jury instruction due to spoliation of evidence. The Court ruled on each of these motions on the record at the pretrial conference. I denied plaintiff's motion *in limine* regarding legal and factual conclusions (Doc. #88) without prejudice to renewal in a specific context of any evidence or witnesses that are offered. I further denied the motion *in limine* precluding evidence of the *Faragher/Ellerth* defense (Doc. #89), on the ground that defendants have not asserted and do not intend to assert a *Faragher/Ellerth* defense. I held in abeyance plaintiff's motion for an adverse jury instruction due to spoliation (Doc. #90).

**CONCLUSION**

Subject to the scope and limitations described above, defendants' motions *in limine* to preclude certain aspects of the testimony of Wanda Givens (Doc. #82) and Rita Marcus (Doc. #83) are GRANTED. Defendants' motion *in limine* to preclude certain aspects of the testimony of Theresa Samuelson (Doc. #84) is GRANTED in part and DENIED in part. Defendants' motion *in limine* to preclude plaintiff's prior complaints (Doc. #85) is DENIED. Defendants' motion *in limine* to preclude certain aspects of the testimony of Thea Robison (Doc. #86) is DENIED. Defendants' motion *in limine* to preclude plaintiff from introducing the content of her statements for the truth of the matters asserted to the Greenwich police department is GRANTED (Doc. #87). Plaintiff's motions *in limine* regarding factual and legal conclusions (Doc. #88) and regarding the *Faragher/Ellerth* defense (Doc. #89) are DENIED. Plaintiff's motion regarding spoliation (Doc. #90) is held under abeyance in light of the evidence at trial.

It is so ordered.

Dated at New Haven this 15th day of January 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge